UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **LEAMON VON MANCHESTER** | **CIVIL ACTION NO. 25-cv-685** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KEVIN COBB ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [doc. # 7] filed by all Defendants. The motion is opposed. [doc. #9]. For reasons detailed below, **IT IS RECOMMENDED** that the motion be **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

Plaintiff Leamon Von Manchester ("Manchester") filed the instant complaint seeking compensatory damages against officers from the Franklin Parish Sheriff's Office ("FPSO") under 42 U.S.C. § 1983. [doc. #1]. Manchester alleges constitutional violations committed by Sheriff Kevin Cobb ("Cobb"), Master Sergeant James Price ("Price"), and Captain Shaun Butler ("Butler") (collectively, "Defendants"). [doc. #1]. Manchester's claims arise from a traffic stop which occurred on May 25, 2024, in or around Wisner, Louisiana. [doc. #3-1]. Manchester was traveling with Johnny Thorpe ("Thorpe") in Thorpe's vehicle when they were stopped by Price. There is some discrepancy as to where this stop took place, as Manchester alleges that the car was pulled over two to three miles north of the city of Wisner [doc. #1, p.3] while Price, in his affidavit of arrest, alleges that the stop took place on Graves Street in the city of Wisner. [doc. #3-1, p.1].

Regardless of the location, the stop occurred while Thorpe was operating the vehicle. [doc. #1]. Price requested Thorpe's license and vehicle registration, but Price alleges that Thorpe replied that his license was suspended, and his insurance was expired. [doc. #3-1, p. 1]. Butler arrived sometime after the initial stop to act as backup for Price. [doc. #1]. Price requested Thorpe and Manchester exit the vehicle and obtained consent from Thorpe to search the vehicle. *Id*. Butler began a pat down search of Thorpe, and Manchester and requested that Manchester produce his identification. *Id*. Manchester initially refused on the grounds that he was not operating the vehicle at the time of the stop and, therefore, did not need to provide identification. *Id*. However, Manchester eventually acquiesced and provided his license to Butler. *Id*.

Following this, Price continued to search the vehicle. *Id*. Price informed Thorpe and Manchester that he found drugs under the passenger seat of the vehicle. *Id*. Price alleges that he then placed Thorpe and Manchester in handcuffs and advised them of their Miranda rights [doc. #3, p.2]. After Manchester and Thorpe were placed under arrest and transported to Franklin Parish Detention Center, Price alleges that a pipe with suspected methamphetamine was found on Manchester's person. *Id*. On May 26, 2024, Price filed a probable cause affidavit which was presented to and signed by Judge Stephen Dean of the Fifth Judicial District of Louisiana. *Id*.

Manchester initiated this claim on May 19, 2025. [doc. #1]. In his Complaint, Manchester alleges three claims under 42 U.S.C. § 1983. *Id*. First, Manchester asserts claims against Price and Butler in their personal capacities for violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. *Id*. Second, Manchester asserts claims against Price and Butler in their official capacities for similar violations. *Id*. Third, Manchester asserts claims against Cobb in his official capacity for violations of his Fourth, Fifth, and Eighth Amendment rights as a result of "[l]ong

running customs of officers…mak[ing] illegal traffic stops" and a failure to properly train officers. *Id*. at 9.

Manchester specifically alleges that Price's initial traffic stop was pretextual, as the stop did not occur in the town of Wisner and was carried out north of where Price alleged he was parked when he spotted Manchester and Thorpe. *Id*. Further, Manchester alleges that the light above the license plate was in working order, contrary to the statements Price made in his probable cause affidavit for the reason underlying the stop. *Id*. Manchester instead claims that the stop was made as a result of surveillance FPSO was conducting of Thorpe and was made for the sole purpose of searching the vehicle for drugs. *Id*. Manchester also claims that, while Butler's request for his identification was permissible, coercing him into presenting it when he initially refused was not. *Id*. Finally, Manchester claims that his arrest was unconstitutional based on the inconsistencies and inaccuracies he alleges exist in the probable cause affidavit. *Id*.

Defendants filed a Motion to Dismiss for Failure to State a Claim arguing that the initial traffic stop, identification request, and subsequent arrest were all constitutional. [doc. #7-1]. Defendants first argue that any potential pretext for the stop is irrelevant as Price properly made the initial stop for a broken tag light. *Id*. Defendants state that Manchester's pleading that the tag light was operational when the car was retrieved is insufficient, as a functional light could still be a violation of La. R.S. 32:304(C). *Id*. Defendants further argue that the request for Manchester's identification was constitutional and that any issues with the affidavit of arrest are insulated from liability by the independent intermediary doctrine. *Id*. Finally, they argue that the official capacity claims against all three Defendants are, first, duplicative and, second, inadequately pled to show that a policy or custom exists within FPSO to conduct illegal traffic stops. *Id*.

Manchester filed an opposition further alleging that the affidavit for arrest fails to properly allege probable cause under the Franks standard and false statements within the affidavit demonstrate the pretextual nature of the traffic stop. [doc. 9]. Manchester also restated his allegations against all Defendants in both their official and individual capacities. *Id*.

Defendants did not file a reply, and the time to do so has elapsed. Accordingly, the matter is ripe.

## LAW & ANALYSIS

### I. Legal Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief, inter alia, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. FED. R. CIV. P.. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *(citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading

Page 4 of 15

comprised of "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

In assessing whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, "the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citations omitted). The Court also may consider documents that a defendant attaches to its motion, so long as the documents are referred to in the complaint and are central to the plaintiff's claims. *Id*. (citing, *inter alia*, *Causey v. Sewell Cadillac-Chevrolet*, Inc., 394 F.3d 285, 288 (5th Cir. 2004)); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (courts must consider the complaint, plus documents incorporated into the complaint by reference, and matters of which a court may take judicial notice).

## II. Section 1983 Claims

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." 42 U.S.C. § 1983. The statute does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). "'Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983.'" *Id*. (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)). Section 1983 suits may be brought against individuals in their official or individual capacity, as well as against a government entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997)).

### A. *Monell* Liability

Manchester's second and third claims are brought against all Defendants in their official capacity under Section 1983. A claim against government officials in their official capacity is a *de facto* suit against the local government entity of which the officials act as agents. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Section 1983 does not allow recovery under a theory of *respondeat superior*; a plaintiff must show that the local government's policy or custom violated the plaintiff's constitutional rights. *Hafer*, 502 U.S. at 25; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994); *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (to successfully state a *Monell* claim, a plaintiff must prove that he was deprived of a federally protected right pursuant to an official municipal policy promulgated by a municipal policymaker). An official policy may be shown

through written policy statements, ordinances, or regulations; a widespread practice that is so common and well-settled as to constitute a custom that represents municipal policy; or a single act conducted by an official or entity with final policymaking authority. *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022). For a practice to constitute a custom, it must have occurred for so long or so frequently that "'the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice'" of municipal employees. *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009)). There is a "single incident exception" to the policy or custom requirement, but the exception is "extremely narrow." *Valle*, 613 F.3d at 542 (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

Concerning the policymaker prong, "'[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.'" *Id*. (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). The Fifth Circuit distinguishes between final policymaking authority and final decision-making authority. *Id*. An individual is a final policymaker and, thus, potentially liable under § 1983 if he is responsible for making law or setting policy in a given area of municipal business. *Sweetin*, 48 F.4th at 392. A final decisionmaker on the other hand, can be liable under that law only if he possesses "final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton*, 541 F.3d at 549.

Official capacity suits may be brought only against an official acting as a policymaker, such that his decisions represent the official policy of the local government unit. *Guillot on behalf*

of *T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023). State law is used to determine whether an official is acting as policymaker. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (plurality opinion). In Louisiana, the sheriff is the final policymaker. *See* LA. CONST. art. 5 § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish."); LA. REV. STAT. § 13:5539(C) ("Each sheriff . . . shall preserve the peace and apprehend public offenders."); *see also Craig v. St. Martin Par. Sheriff*, 861 F. Supp. 1290, 1301 (W.D. La. 1994). Neither Price nor Butler is currently serving or formally served as Sheriff of Franklin Parish. Thus, neither would be policymakers for the purposes of *Monell* liability and are, therefore, unable to be sued in their official capacity. *Guillot*, 59 F.4th at 750. Cobb, on the other hand, is the policymaker for FPSO and, thus, the official capacity claims may be brought against him.

Cobb's status as the official policymaker is not the end of the inquiry, however. "[T]he custom or policy [must] serve[] as the moving force behind the [constitutional] violation" at issue. *Meadowbriar Home For Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996). Alternatively, the plaintiff must demonstrate that his injuries result from the policy's execution. *Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire*, 957 F.2d at 1278).

> Manchester's allegations concerning an underlying policy are as follows:
>
> Long running customs of officers receiving tips and then proceeding to make illegal traffic stops in hopes of finding probable cause to make unlawful arrest…[f]or not training nor supervising top ranking Deputies in his [d]epartment which made way for all sort of unconstitutional acts. By the demonstration that the very men the Sheriff has in place to supervise and train partaking in such illegal activities…proving long running customs and lack of proper procedures.

Complaint [doc. #1, p. 9]. There are no allegations that a written document memorializes the "policy" to make illegal or unconstitutional traffic stops. Consequently, Manchester has failed to plead that the existence of a municipal policy. Nor are there allegations beyond mere conclusory statements that any of these practices are so widespread as to be accepted and expected. Indeed, Manchester predicates his allegations on exactly one incident: the traffic stop and subsequent search that culminated in his arrest. These allegations are insufficient to establish a municipal custom. Manchester has thus failed to plead the existence of a policy or custom that was the moving force behind the alleged violations.

Manchester's remaining path to establish the City's municipal liability is the "single incident exception" in which an official with final policymaking authority commits the relevant act. Plaintiff again fails to clear this hurdle because, as discussed, neither Butler nor Price is a final policymaker. Nor has Manchester alleged that they were acting at the direction of a final policymaker when the alleged misconduct occurred. As such, none of the alleged violations can be attributed to a final policymaker and do not reflect municipal policy.

In the face of all this, Manchester argues that "Cobb has no formal policy or way to properly log complaints, simply ignoring verbal complaints…Cobb protects his own interest by [withholding] body and dash cam footage which enables deputies to continue in unlawful practices with confidence." Opposition to M/Dismiss [doc. #9, p. 5]. A conclusory statement of this nature — made in an opposition briefing, not controlling pleadings, no less — is insufficient to move allegations devoid of meaningful detail into the realm of plausibility. In short, Manchester has failed to plead the existence of a municipal policy or custom that was the moving force behind the alleged violation of his rights and therefore has failed to state a claim under Section 1983 against all Defendants.

Accordingly, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss with regard to the Section 1983 claims brought against all Defendants in their official capacity be **GRANTED**.

### B.     Individual Liability

Section 1983 also provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Id*. "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id*. (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted). Accordingly, a claim against a state actor in his personal capacity need not be attributed to a governmental "policy or custom." *Hafer*, 502 U.S. at 25. In liberally construing the Complaint, Manchester has alleged that Price and Butler violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights through three separate instances over the course of their interaction. First, Manchester asserts that Butler and Price stopped the vehicle for pretextual reasons related to Thorpe's criminal history. Second, Manchester asserts that Butler erroneously required him to produce identification. Finally, Manchester asserts that Price provided false statements and made material omissions in the affidavit for arrest.

Given that the false statements and material omissions are inextricably intertwined with the issues alleged as to the initial stop, the undersigned will look to those in unison. To determine whether Price and Butler violated Manchester's rights, the undersigned refers to Price's probable cause affidavit, which is attached to Manchester's corrective document for the Complaint. [doc. #3-1]. To state a plausible claim for relief, each of Manchester's claims requires that he allege a lack of probable cause. "The information necessary to show probable cause must be contained within a written affidavit given under oath." *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007). Thus, Price's affidavit is central to Manchester's claims and, because Manchester's complaint references Price's affidavit, the undersigned is permitted to rely upon it at this stage in the litigation. *See Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (describing how a court may reference a document attached to a defendant's motion to dismiss when the document is both referenced in plaintiff's complaint and central to plaintiff's claims.).

Defendants argue that Judge Dean's decision that the affidavit contained facts supporting arrest insulates Defendants from any claims made as a result of the affidavit. The independent intermediary doctrine applies to claims that a search or detention occurred without legal process. *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548 (5th Cir. 2016); *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). Under this doctrine, "'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300-01 (5th Cir. 2011) (quoting *Cuadra*, 626 F.3d at 813). But "[d]eference to the magistrate . . . is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984). If "the deliberations of [the] intermediary were in some way tainted by the actions of the defendant," the defendant can still be liable. *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022).

A plaintiff may show that an independent intermediary was tainted by proving one of two claims—a *Malley* or *Franks* claim. See *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); *Franks v. Delaware*, 438 U.S. 154 (1978); *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006).

Manchester alleges that Price and Butler violated his Fourth Amendment rights when they provided false information to secure an arrest warrant—better known as a *Franks* claim. See *Franks*, 438 U.S. at 171; *see also Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (applying *Franks* to an arrest warrant.). To state a *Franks* claim, a plaintiff must allege "that (1) the affidavit supporting a warrant contained false statements or material omissions; (2) the affiant made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statements or material omissions were necessary to the finding of probable cause." *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021).

Put another way, the affiant's false statements must be material to the magistrate's decision to find probable cause. So, to determine whether the false statement misled a magistrate, the question is whether "'there remains sufficient content in the warrant affidavit to support a finding of probable cause' after the 'material that is the subject of the alleged falsity or reckless disregard is set to one side.'" *Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (quoting *Franks*, 438 U.S. at 171-72).

To determine probable cause, a court "must look to the 'totality of the circumstances' and decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer' demonstrate 'a probability or substantial chance of criminal activity.'" *Terwilliger*, 4 F.4th 270 at 282 (*quoting D.C. v. Wesby*, 583 U.S. 48, 57 (2018)). Probable cause means a "fair

probability" that the defendant committed the crime, which requires more than a "bare suspicion" but less than a preponderance of the evidence. *Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023).

At this stage, the Court is bound to accept as true all well-pleaded facts in Plaintiff's Complaint—not to weigh factual credibility. *See MetroPCS v. MyNextCellular, LLC*, 2016 WL 8671928, at *2 (E.D. Tex. Dec. 2, 2016). Indeed, "'mere allegations of taint' . . . may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 337 (E.D. Tex. 2021) (quoting *McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017).).

Viewing Manchester's Complaint in the most favorable light, then, the Court finds that he has adequately pleaded sufficient facts to state a Section 1983 claim against Price and Butler. Fifth Circuit precedent makes clear that an officer can be subject to liability under *Franks* if he assisted in the preparation of or otherwise presented or signed a warrant application. *Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017); *Jennings v. Patton*, 644 F.3d 297, 300-01 (5th Cir. 2011); *Hampton v. Oktibbeha County Sheriff Department*, 480 F.3d 358, 365 (5th Cir. 2007). Here, Manchester has alleged that Price and Butler worked in unison to prepare the allegedly false affidavit.

Specifically, Manchester asserts the light illuminating the license plate was not broken as the affidavit stated was the basis for the stop. Further, he does not merely allege the falsehood of this statement but alleges affirmatively that the light was functioning when the vehicle was retrieved from impound. [doc. #1, p. 9]. Manchester also alleges that Price was not parked where he claims to have been, also calling into question the traffic violation underlying the arrest. When the allegedly false statements are excised from the affidavit, then probable cause would not have supported Manchester's arrest. As Manchester's claim that he was improperly required by Butler to produce identification flows from the allegedly improper stop, that claim, too, survives.

Accordingly, **IT IS RECOMMENDED** that the Defendants' Motion to Dismiss be **DENIED** insofar as it relates to the individual capacity claims against Price and Butler.

## CONCLUSION

For the above-stated reasons,

**IT IS RECOMMENDED** that the Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) [doc. #7] filed by Defendants be **GRANTED IN PART** and **DENIED IN PART**. **IT IS RECOMMENDED** that Defendants' Motion be **GRANTED** as to Manchester's official capacity claims against all Defendants. **IT IS FURTHER RECOMMENDED** that Defendants' Motion be **DENIED** as to the individual capacity claims against Price and Butler.

**IT IS FURTHER RECOMMENDED** that Manchester's *Monell* liability claims pursuant to 42 U.S.C. § 1983 against Defendants be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under FED. R. CIV. P. 6(b). A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION SET FORTH ABOVE, WITHIN 14 DAYS AFTER BEING SERVED WITH A COPY, SHALL BAR THAT PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL**

**CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.** *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

In Chambers, at Monroe, Louisiana, on this 22nd day of January, 2026.

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Kayla Dye McClusky*
　　　　　　　　　　　　　　　　　　　　　　　KAYLA DYE MCCLUSKY
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE